IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:10-CV-164-FL

| | |
|---|---|
| LESLIE JAMES FARRIOR, JR., ) | |
| ) | |
| Plaintiff/Claimant, ) | |
| ) | |
| ) | **MEMORANDUM AND** |
| v. ) | **RECOMMENDATION** |
| ) | |
| MICHAEL J. ASTRUE, Commissioner of ) | |
| Social Security, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on Claimant's motion for summary judgment[1] [DE-19] and the Commissioner's motion for judgment on the pleadings [DE-23]. Claimant Leslie James Farrior, Jr. ("Claimant") filed this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the denial of his application for a period of disability and Disability Insurance Benefits ("DIB"). Claimant responded [DE-25] to Defendant's motion and the time for filing a reply has expired. Accordingly, the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, this court recommends denying Claimant's Motion for Summary Judgment, granting Defendant's Motion for Judgment on the Pleadings and upholding the final decision of the Commissioner.

## STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability and DIB on 12 September

---

[1] The court notes that pursuant to a court order dated 27 October 2010, a motion for judgment on the pleadings is the proper vehicle in which the parties should proceed to present the issues in dispute for adjudication by this court. [DE-18].

2006, alleging disability beginning 1 June 2006. (R. 12,101, 127). His claim was denied initially and upon reconsideration. (R. 52-55, 61-63). A hearing before the Administrative Law Judge ("ALJ") was held on 18 December 2008, at which Claimant was represented by counsel and a vocational expert ("VE") appeared and testified. (R. 19-43). On 11 March 2009, the ALJ issued a decision denying Claimant's request for benefits. (R. 9-18). On 25 June 2010, the Appeals Council denied Claimant's request for review. (R. 1-5). Claimant then filed a complaint in this court seeking review of the now final administrative decision.

## STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ

analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

## DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 404.1520 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 474 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

In this case, Claimant alleges the following errors by the ALJ: (1) improper evaluation of the treating physician's opinion; (2) improper assessment of Claimant's credibility; (3) improper assessment of Claimant's residual functional capacity ("RFC") and (4) improperly reliance on VE testimony. Pl.'s Mem. Supp. Pl.'s Mot. J. Pleadings at 6-7, 10, 12. ("Pl.'s Mem.").

## FACTUAL HISTORY

### I. ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant was no longer engaged in substantial gainful employment. (R. 14). Next, the ALJ determined Claimant's degenerative joint

disease ("DJD") of the left ankle was a severe impairment. *Id.* However, at step three, the ALJ concluded this impairment was not severe enough to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform lift/carry 10 pounds frequently and 20 pounds occasionally, stand and/or walk 2 hours in an 8 hour workday and sit 6 hours in an 8 hour workday. (R. 15). In making this assessment, the ALJ found Claimant's statements about his limitations not fully credible. (R. 16). At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of his past relevant work. (R. 17). Nonetheless, at step five, upon considering Claimant's age, education, work experience and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 17).

## II. Claimant's Testimony at the Administrative Hearing

At the time of Claimant's administrative hearing, Claimant was 52 years old and unemployed. (R. 23). Claimant is a high school graduate. (R. 23). Claimant was last employed as a machine operator at a "cutting and pressed metal plant." (R. 23).

Claimant testified that he is unable to work due to arthritis pain associated with his left ankle. (R. 24). Claimant stated that his work required that he be on his feet "all the time" and following surgery on his ankle in August 2006, his left ankle was unable to support his weight. (R. 24). Claimant explained he experiences ankle pain "[a]ll the time" which feels like someone is sticking a needle into his heel. (R. 31, 40). Claimant testified that the pain radiates up his leg and to his back when he walks. (R. 40). Claimant stated further that because he must shift his weight onto his right

foot when walking, his right ankle hurts too. (R. 40). Claimant takes over-the-counter pain medications, such as Tylenol and BC Powder, and receives periodic steroid injections for his ankle pain. (R. 27). Claimant testified that the steroid shots provide relief for no more than three weeks. (R. 31). Claimant explained that sometimes his ankle pain disrupts his sleep. (R. 31).

Claimant testified that he can stand "maybe ten good minutes." (R. 30). Claimant experiences stiffness in his ankle when he sits, which is alleviated in part by rubbing and elevating his ankle. (R. 30). Claimant has difficulty moving from a sitting position to a standing position because he must shift his weight to his right foot to stand. (R. 30). Claimant has used a cane since his surgery in August 2006. (R. 30). Claimant cannot squat and has difficulty climbing stairs. (R. 31).

Claimant testified that he spends the majority of his time at home, watching television. (R. 25). Claimant cooks and washes dishes "every now and then" but performs no yard work. (R. 25, 32). Claimant testified that because he owns a standard transmission vehicle, he drives only "a little bit" as he "can't master the clutch" given his ankle impairment. (R. 26). However, Claimant has no difficulty driving an automatic. (R. 26).

### III. Vocational Expert's Testimony at the Administrative Hearing

Carroll Hart Crawford testified as a VE at the administrative hearing. (R. 33-39). After the VE's testimony regarding Claimant's past work experience (R. 35-36), the ALJ posed three hypotheticals. First, the ALJ asked whether sedentary, semi-skilled jobs existed for an individual of the same age and with the same education and work experience as Claimant. (R. 36-37). The VE testified that such a person could perform the requirements of the following representative occupations which exist in significant numbers regionally and nationally: (1) quality control

coordinator (DOT # 168.167-066), (2) material lister (DOT # 229.387-010), and (3) production clerk (DOT # 221.382-018). (R. 37).

Second, the ALJ asked the VE whether an individual with the same vocational background and RFC as stated in the first hypothetical and who can perform light work from an exertional standpoint but must sit for the majority of the day would be able to perform unskilled work not requiring bilateral foot controls. (R. 38). The VE testified that such a person could perform the requirements of the representative occupations of small parts assembler (DOT # 706.684-022) and wire worker (DOT # 728.684-022). (R. 38-39). Third, the ALJ asked whether either hypothetical individual could perform the above representative positions if the individual needed to elevate his leg above waist level four or five times a day for periods of up to 10 to 15 minutes, to which the VE responded in the negative. (R. 39).

## DISCUSSION

**I.  The ALJ did not err in evaluating the opinion of Claimant's treating physician.**

Claimant contends the ALJ should have accorded controlling weight to the opinion of Claimant's treating physician, David A. Esposito, M.D. Pl.'s Mem. at 7.

The ALJ must generally give more weight to the opinion of a treating physician because that doctor is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. 20 C.F.R. § 404.1527(d)(2). However, "[c]ircuit precedent does not require that a treating physician's testimony 'be given controlling weight.'" *Craig*, 76 F.3d at 590 (quoting *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992)). In fact, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590; *see also Mastro*, 270 F.3d at 178 (explaining "the

6

ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence") (citation omitted); *Wireman v. Barnhart*, No. 2:05-CV-46, 2006 U.S. Dist. LEXIS 62868, at *23, 2006 WL 2565245, at *8 (W.D. Va. Sept. 5, 2006) (stating an ALJ "may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source . . . if he sufficiently explains his rationale and if the record supports his findings"); 20 C.F.R. § 404.1527(d)(3).

When the ALJ does not give the opinion of a treating physician controlling weight, the ALJ must weigh the opinion pursuant to the following non-exclusive list: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship between the physician and the claimant; (3) the supportability of the physician's opinion; (4) the consistency of the opinion with the record and (5) whether the physician is a specialist. 20 C.F.R. § 404.1527(d)(2)-(6); *see also Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005). Moreover, the ALJ's decision "must contain specific reasons for the weight given to the treating source's medical opinion, supported by substantial evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." S.S.R. 96-2p, 1996 SSR LEXIS 9, at *12, 1996 WL 374188, at *5.

The medical opinion at issue appeared in a letter dated 7 February 2007, wherein Dr. Esposito, Claimant's treating orthopedic surgeon, stated

> Mr. Farrior is under my care for end state DJD involving his left ankle. Eventually he will require an ankle fusion which may or may not reduce his symptoms that are considerable at this time. From a work standpoint he is unable to stand and the only job that he could do would be sitting and the ankle would have to be elevated above the heart. I think this is a permanent problem even if he was to be fused. With

7

regards to his left ankle and his ability to work, he is permanently disabled unless the aforementioned limitations can be recognized and followed in the setting.

(R. 241). The ALJ acknowledged implicitly the length, frequency, nature and extent of Claimant's treatment relationship with Dr. Esposito via multiple references to his treatment notes. (R. 15-16, 175, 179, 189, 194-95, 197-98, 216, 223-24, 234, 237). However, finding Dr. Esposito's opinion not fully consistent with the record as a whole, the ALJ accorded it only "great weight" as opposed to "controlling weight." (R. 16). Specifically, the ALJ found Dr. Esposito's opinion as to Claimant's ability to sit at the sedentary exertional level supported by the record. However, the ALJ found Dr. Esposito's opinion regarding Claimant's inability to stand and need to keep his left ankle elevated while sitting inconsistent with Claimant's testimony as to his daily activities and Dr. Esposito's treatment records. (R. 16).

With respect to Claimant's testimony, the ALJ noted that Claimant engages in activities – including driving a standard transmission truck, cooking for himself and doing dishes – "that refute Dr. Esposito's suggestion as to [Claimant's] limitation with respect to standing and walking." (R. 16). Claimant contends the ALJ's description of Claimant's "marginal" daily activities "put[s] a significant gloss on the record." Pl.'s Mem. at 9. As for Claimant's ability to drive, Claimant notes that he testified to rarely driving his truck "because it had a manual clutch that he could not work with his injured ankle, and, in fact he was trying to sell the truck." *Id.* While the ALJ failed to summarize completely Claimant's testimony about the truck and it is unclear from the testimony how often Claimant had driven the truck during his three year ownership of the same, it is undisputed that Claimant testified to having driven the truck at some point. (R. 26) (stating he "was driving [a standard transmission truck] but [he] [doesn't] drive it now"). Regardless, Claimant also testified

8

that he "can do real good when [he] driv[es] the automatic." (R. 26). Claimant testified further to spending the majority of his days "watching television." *Id.* As the ALJ observed, such activities "do not indicate his ankle is consistently elevated as suggested by Dr. Esposito." (R. 16). As for cooking and washing dishes, Claimant emphasizes he does so "only for himself." Pl.'s Mem. at 9. However, an ALJ is required to consider the consistency of the treating physician's opinion with the record as a whole. *Johnson*, 434 F.3d at 654. Here, Claimant's testimony as to his daily activities, as well as his testimony that he can stand comfortably "maybe ten good minutes," is inconsistent with Dr. Esposito's opinion that Claimant is "unable to stand." (R. 30, 241).

With respect to Dr. Esposito's treatment records, the ALJ observed that they do not include any functional limitations or other restrictions upon Claimant's activities which would prevent him from working. (R. 16). In his decision, the ALJ noted that Claimant's treatment following his arthroscopic surgery had been limited to periodic injections with no prescribed pain medications. (R. 16, 194, 224-26, 234-35, 237). Post-surgery progress reports cited by the ALJ also note that while Claimant had limited motion with his left ankle, he was in no acute distress and had no instability of the ankle. (R. 225-26, 234-35).

Claimant does not contest that Dr. Esposito's treatment records revealed no functional restrictions. Pl.'s Mem. at 11. Rather, Claimant contends the lack of functional limitations within the treatment notes is of no moment given such records are generally not prepared in anticipation of litigation. *Id.* That is, Claimant essentially argues that a treating physician's opinion, and not his or her notes, is what matters for an ALJ's determination. Claimant relies on cases from the Third, Eighth, and Ninth Circuits that distinguish doctors' notes for the purposes of treatment from those doctors' ultimate opinions. *See Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 356 (3d Cir.

2008) (holding that medical assessments of a condition at the time of examination are to be distinguished from the assessment of the ability to function in a work setting, and such differing assessments are not to be automatically assumed to be contradictory); *Leckenby v. Astrue*, 487 F.3d 626, 633 n.7 (8th Cir. 2007) (noting "[i]t does not seem unusual that a physician would see no need to make specific treatment notes on an unemployed patient's need for work breaks during a routine medical examination"); *Orn v. Astrue*, 495 F.3d 625, 634 (9th Cir. 2007) (a medical condition need not be "mentioned in every report to conclude that a physician's opinion is supported by the record"). Even accepting as true Claimant's argument that a doctor's treatment notes and formal opinions on work capabilities are intended for different purposes, the court is not persuaded that the ALJ's conclusions are unsupported. Dr. Esposito's medical opinion contains little reference to medical findings and the ankle elevation requirement is not repeated in his treatment notes. In accordance with Social Security regulations and caselaw, the ALJ properly relied on this inconsistency between Dr. Esposito's medical opinion and his treatment records. *See Craig*, 76 F.3d at 590 (stating a medical opinion should be accorded significantly less weight if it is not supported by clinical evidence); *see also* 20 C.F.R. § 404.1527(d)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion.").

It is not the task of the court to reweigh the evidence and reach its own independent conclusions. *See Mastro*, 270 F.3d at 176. Rather, the court's duty is to determine if substantial evidence supports the ALJ's conclusion. *See id.* In applying the deferential standard of review, the court finds the ALJ's decision to discount the opinion of Dr. Esposito is adequately explained,

consistent with proper standards of law, and based on more than a scintilla of evidence. Additionally, the ALJ complied with S.S.R. 96-2p by making his decision sufficiently specific for subsequent viewers to understand the weight accorded Dr. Esposito's opinion and the reasons for said weight. *See Koonce v. Apfel*, No. 98-1144, 166 F.3d 1209, 1999 U.S. App. LEXIS 307, at *7, 1999 WL 7864, at *2 (4th Cir. 1999) ("An ALJ's determination as to the weight to be assigned to a medical opinion will generally not be disturbed absent some indication that the ALJ has dredged up specious inconsistencies or has not given good reason for the weight afforded a particular opinion.") (internal citations and quotations omitted). Accordingly, the ALJ was within his discretion in not giving controlling weight to Dr. Esposito's opinion.

## II. The ALJ properly assessed Claimant's credibility.

Claimant contends the ALJ failed to properly assess Claimant's credibility. Pl.'s Mem. at 10. Federal regulation 20 C.F.R. § 404.1529(a) provides the authoritative standard for the evaluation of subjective complaints of pain and symptomology. *See Craig*, 76 F.3d at 593. Under this regulation, "the determination of whether a person is disabled by pain or other symptoms is a two-step process." *Id.* at 594. First, as an objective matter, the ALJ must determine whether Claimant has a medical impairment which could reasonably be expected to produce the pain or other symptoms alleged. *Id.*; *see also* S.S.R. 96-7p, 1996 SSR LEXIS 4, at *5, 1996 WL 374186, at *2. If this threshold question is satisfied, then the ALJ evaluates the actual intensity and persistence of the pain or other symptoms, and the extent to which each affects a claimant's ability to work. *Id.* at 595. The step two inquiry considers "all available evidence," including objective medical evidence (i.e., medical signs and laboratory findings), medical history, a claimant's daily activities, the location, duration, frequency and intensity of symptoms, precipitating and aggravating factors, type, dosage, effectiveness and

adverse side effects of any pain medication, treatment, other than medication, for relief of pain or other symptoms and functional restrictions. *Id.*; *see also* 20 C.F.R. § 404.1529(c)(3); S.S.R. 96-7p, 1996 SSR LEXIS 4, at *6, 1996 WL 374186, at *3. The ALJ may not discredit a claimant solely because his subjective complaints are not substantiated by objective medical evidence. *See id.* at 595-96. However, neither is the ALJ obligated to accept the claimant's statements at face value; rather, he "must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." S.S.R. 96-7p, 1996 SSR LEXIS 4, at *6, 1996 WL 374186, at *3.

Before addressing the specific arguments raised by Claimant, the court observes Claimant's implication that this case is governed by *Hines v. Barnhart*, 453 F.3d 559 (4th Cir. 2006). *See* Pl.'s Mem. at 12 (arguing Claimant "was permitted to rely upon his testimony at the second step of the credibility analysis to prove functional limitations" and citing *Hines*). Any reliance by Claimant on *Hines* is misplaced. Though the court in *Hines* found that the claimant was entitled to rely exclusively on subjective evidence, the court noted:

> While objective evidence is not mandatory at the second step of the test, [t]his is not to say, however, that objective medical evidence and other objective evidence are not crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs her ability to work. They most certainly are. Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, *they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment*, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers.

*Hines*, 453 F.3d at 565 n.3 (emphasis added) (quoting *Craig*, 76 F.3d at 595). Therefore, claimants are not automatically entitled to rely exclusively on subjective evidence to show that they are unable

12

Case 7:10-cv-00164-FL Document 26 Filed 06/01/11 Page 12 of 20

to perform work eight hours per day, five days per week. The court notes further that in *Hines*, the claimant suffered from sickle cell anemia, a "particularly insidious [disease] because it rarely produces the objective medical evidence that clinicians desire" and "there is no way to demonstrate objectively that a [] patient [with sickle cell anemia] has pain." *Hines*, 453 F.3d at 561. Unlike the claimant in *Hines*, here Claimant is not suffering from a disease that rarely produces objective medical evidence. Accordingly, the ALJ was permitted to evaluate the subjective allegations of pain in conjunction with the objective medical evidence and other evidence of record. *See Morris v. Astrue*, No. 7:08CV630, 2010 U.S. Dist. LEXIS 20036, at *9, 2010 WL 838862, at *3 (W.D. Va. Mar. 5, 2010) (noting the ALJ is not required "to defer blindly to [the claimant's] testimony about the level of impairment caused by his pain once [the claimant] has established objective evidence of an underlying medical impairment").

Here, the ALJ considered Claimant's subjective complaints of left ankle pain and stiffness. (R. 15). The ALJ found that Claimant had a medically determinable impairment reasonably capable of causing Claimant's subjective symptoms but concluded Claimant's subjective complaints were not fully credible. (R. 16). In reaching this conclusion, the ALJ noted the following: (1) the contrast between Claimant's testimony alleging debilitating pain in his left ankle and his daily activities, including driving a standard transmission truck, cooking for himself and doing dishes; (2) Claimant's election to continue with injections rather than having a fusion; (3) Claimant is prescribed no pain medications; and (4) treatment records impose no functional limitations or other restrictions. *Id.* Claimant contends the ALJ's rejection of Claimant's testimony "was erroneously based upon a mischaracterization of [Claimant's] daily activities, and improper requirements that [Claimant] have additional surgery and [] his limitations be documented in treatment records." Pl.'s Mem. at 13.

13

At the outset, the court dispenses with Claimant's argument regarding the physician's failure to document Claimant's limitations in treatment records. As explained above, the ALJ properly relied on the lack of evidence in Dr. Esposito's treatment notes warranting the elevation of Claimant's ankle to such an extreme degree. *See Craig*, 76 F.3d at 590; *see also* 20 C.F.R. § 404.1527(d)(3). Next, the court finds the ALJ's failure to summarize completely Claimant's testimony regarding the driving of a standard transmission truck harmless error. The fact Claimant can drive a vehicle, regardless of the type of transmission, lends support to the ALJ's determination that Claimant can perform sedentary work and is not disabled. Claimant could not drive an automatic transmission "real good" if he must keep his left ankle elevated. (R. 26). As for Claimant's daily activities, the ALJ did not deny Claimant's claim based on the evidence of those activities alone. Rather, the ALJ accounted for Claimant's ability to cook and wash dishes as one piece of evidence in weighing his credibility with respect to his claimed inability to work and with respect to his residual functional capacity to perform work. *See Ausburne v. Barnhart*, No. 4:04-CV-78, 2005 U.S. Dist. LEXIS 15873, at *7-8, 2005 WL 1862642, at *3 (W.D. Va. Aug. 1, 2005) (noting "the Commissioner certainly has regulatory authority to consider a claimant's daily activities in evaluating a claimant's subjective symptoms," though the activities must be "vocationally relevant"); *Mickles v. Shalala*, 29 F.3d 918, 921 (4th Cir. 1994) (noting "[t]he only fair manner to weigh a subjective complaint of pain is to examine how the pain affects the routine of life").

Finally, the ALJ appropriately considered Claimant's conservative treatment for his ankle impairment in evaluating Claimant's credibility. *See Clark v. Comm'r of Soc. Sec.*, No. 2:09-CV-417, 2010 U.S. Dist. LEXIS 69025, at *61, 2010 WL 2730622, at *11 (E.D. Va. June 3, 2010) (finding the ALJ properly relied on claimant's conservative treatment); *McCullough v. Astrue*, No.

9:08-2885-PMD-BM, 2009 U.S. Dist. LEXIS 124294, at *20 (D.S.C. Nov. 9, 2009) (citing *Robinson v. Sullivan*, 956 F.2d 836, 840 (8th Cir. 1992) ("[generally conservative treatment not consistent with allegations of disability]")). As the ALJ observed, treatment of Claimant's ankle pain has generally consisted of "periodic injections." (R. 16, 194, 226, 235, 237, 224, 234-35).

However, relying on *Burgess v. Astrue*, 537 F.3d 117 (2d Cir. 2008), Claimant contends the ALJ's reasoning with respect to Claimant's conservative treatment instead of having a fusion was misplaced and not dispositive of his credibility. Pl.'s Mem. at 11. In *Burgess*, the Second Circuit discussed situations wherein an ALJ or a judge may properly decline to afford a treating source opinion controlling weight. *Burgess*, 537 F.3d at 128-29. However, the *Burgess* court warned that an ALJ or judge may not discount the opinion of a treating physician merely because he or she has recommended a conservative treatment regimen. *Burgess*, 537 F.3d at 129 (explaining adjudicators "may not impose[] their [respective] notion[s] that the severity of a physical impairment directly correlates with the intrusiveness of the medical treatment ordered . . . .") (alterations in original and internal quotation marks omitted).

Here, the ALJ did not discount Dr. Esposito's opinion based on his conservative treatment of Claimant's pain. Accordingly, the court finds Claimant's reliance on *Burgess* misplaced. Rather, as part of his credibility analysis, the ALJ reviewed the objective medical evidence and noted Claimant's medical problems were amenable to conservative treatment and that Claimant's treating physician placed no restrictions on Claimant's activities and prescribed no pain medications. (R. 16); *see Mann v. Astrue*, No. 5:07-00201, 2008 U.S. Dist. LEXIS 26618, at *46, 2008 WL 906346, at *16 (S.D. W. Va. Mar. 31, 2008) (explaining the ALJ properly considered the record in evaluating claimant's credibility, including his conservative treatment). Claimant contends, without citation to

15

the record, that "there is a significant probability that [ankle fusion] will not improve his functioning," implying Claimant's conservative treatment is not dispositive as to his credibility. Pl.'s Mem. at 11. Social Security Ruling 96-7p emphasizes "the adjudicator must not draw any inferences about an individual's symptoms and their functional effects . . . without first considering any explanations that the individual may provide, or other information in the case record . . . ." S.S.R. 96-7p, 1996 SSR LEXIS 4, at *22, 1996 WL 374186, at *7. One explanation is an "individual may have been advised by a medical source that there is *no further, effective treatment* that can be prescribed and undertaken that would benefit the individual." *Id.*, 1996 SSR LEXIS 4, at *23, 1996 WL 374186, at *8 (emphasis added). That Claimant did not undergo fusion may not be explained on this basis in light of Dr. Esposito's opinion that "[e]ventually [Claimant] will require an ankle fusion which *may or may not reduce* his symptoms that are considerable at this time." (R. 241) (emphasis added). Claimant points to no evidence indicating fusion will offer no benefit to Claimant. Accordingly, the ALJ properly found that Claimant's testimony was not entirely credible, supported in part by the ALJ's observation that Claimant's treatment was conservative in nature.

It is within the ALJ's province to determine credibility and, in fulfilling that function, the ALJ is entitled to consider inconsistencies between a claimant's testimony and the evidence of record. *See Mickles*, 29 F.3d at 929 ("Subject only to the substantial evidence requirement, it is the province of the [ALJ], and not the courts, to make credibility determinations."). To the extent that the ALJ detailed the relevant facts underlying his finding that Claimant's testimony was not fully credible, his credibility finding is entitled to substantial deference. *See Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (an ALJ's observations regarding credibility should be given great weight). Here, the ALJ comported fully with the credibility evaluation prescribed by Social Security Ruling 96-7p by

making findings, supported by reasons, with respect to Claimant's alleged symptoms, the medical record and Claimant's own testimony. While Claimant may disagree with the manner in which the ALJ took account of this evidence, this court cannot re-weigh the evidence. *See Mastro*, 270 F.3d at 176. For the foregoing reasons, Claimant's argument as to this issue is without merit.

### III.   The ALJ's RFC is supported by substantial evidence.

Claimant contends the ALJ "failed to properly determine [Claimant's] RFC by failing to follow the treating physician rule and failing to properly evaluate [Claimant's] credibility." Pl.'s Mem. at 6.

An individual's RFC is defined as that capacity which an individual possesses despite the limitations caused by his physical or mental impairments. 20 C.F.R. § 404.1545(a)(1); *see also* S.S.R. 96-8p, 1996 SSR LEXIS 5, at *5, 1996 WL 374184, at *1. The RFC assessment is based on all the relevant medical and other evidence in the record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. § 404.1545(a)(3); *see also* S.S.R. 96-8p, 1996 SSR LEXIS 5, at *6, 1996 WL 374184, at *5. The RFC assessment "must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." S.S.R. 96-8p, 1996 SSR LEXIS 5, at *21, 1996 WL 374184, at *7.

The ALJ's decision indicates that he considered all the relevant evidence before determining Claimant maintained the RFC to sit, stand and walk at the sedentary exertional level but lift and carry at the light exertional level. As discussed above, the ALJ's opinion provides a detailed review of Claimant's medical records, citing medical facts and underlying evidence as to Claimant's DJD of the left ankle. In addition, the RFC assessment takes account of Claimant's testimony concerning

pain to the extent that this testimony proved consistent with the objective medical evidence before the ALJ. Also, the ALJ's review of Claimant's medical impairment includes consideration of Dr. Esposito's February 2007 opinion. While Claimant contends the RFC finding is not supported by substantial evidence based on erroneous evaluations of the treating physician's opinion and Claimant's credibility, as detailed above, the court finds the ALJ's consideration of both was proper.

Based on the foregoing, this court finds that the ALJ's RFC determination is supported by substantial evidence. The ALJ analyzed all of the relevant evidence, sufficiently explained his findings and applied the correct legal standards in evaluating Claimant's RFC. Accordingly, Claimant's argument as to this issue is without merit.

## IV. The ALJ properly relied on the testimony of the vocational expert.

Claimant contends the ALJ committed error by improperly relying on VE testimony. Pl.'s Mem. at 13. Specifically, Claimant argues that "[s]ince the ALJ failed to properly determine [Claimant's] RFC based upon a misapplication of the treating physician rule and misapplied the appropriate credibility standard, the [VE's] responses to a hypothetical based upon the ALJ's RFC necessarily fails." *Id.*

The purpose of a VE is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform." *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). As such, hypothetical questions posed to a VE must accurately set forth all of a claimant's physical and mental impairments. *Id.* "Testimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Secretary's decision." *Pratt v. Sullivan*, 956 F.2d 830, 836 (8th Cir. 1992). The corollary to this rule is that the ALJ need only include in his questioning those impairments which

18

the ALJ has found to be credible. *See Johnson*, 434 F.3d at 659 (holding a hypothetical valid because it adequately reflected claimant's characteristics as found by the ALJ); *Ehrhart v. Sec'y, Health & Human Servs.*, 969 F.2d 534, 540 (7th Cir. 1992) (noting "the hypothetical question posed by the ALJ was proper because it reflected [claimant's] impairments to the extent that the ALJ found them supported by evidence in the record"). If the ALJ does not believe that a claimant suffers from one or more claimed impairments, and substantial evidence supports that conclusion, then the ALJ does not err if he fails to include those impairments in his questioning of the VE. *Sobania v. Sec'y, Health & Human Servs.*, 879 F.2d 441 (8th Cir. 1989) (explaining "the hypothetical is sufficient if it sets forth the impairments which are accepted as true by the ALJ"); *McPherson v. Astrue*, 605 F. Supp. 2d 744, 761 (S.D. W. Va. 2009) ("The ALJ is under no duty to present the VE with hypothetical questions that include [claimant's] claimed impairments if the ALJ has found those impairments to be not severe or not credible.").

In this case, the hypothetical posed to the VE incorporated Claimant's RFC as determined by the ALJ and the ALJ precisely set out Claimant's individual physical and mental impairments. (R. 472); *see Walker*, 889 F.2d at 50. Claimant contends the ALJ should have given deference to the VE's testimony that no work was available for an individual needing to elevate his leg above waist level throughout the day. Pl.'s Mem. at 13. However, as discussed above, the ALJ properly determined that the evidence did not support this limitation. Accordingly, Claimant's argument as to this issue is without merit.

## CONCLUSION

For the reasons stated above, this court RECOMMENDS Claimant's Motion for Summary Judgment [DE-19] be DENIED, Defendant's Motion for Judgment on the Pleadings [DE-23] be

GRANTED and the final decision of the Commissioner be UPHELD.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have fourteen (14) days upon receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

This, the 1st day of June, 2011.

Robert B. Jones, Jr.
United States Magistrate Judge